IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No.   07-cv-00318-WDM

OLOYEA D. WALLIN,

        Plaintiff,

v.

F. DYCUS, *et al.*,

        Defendants.

---

**ORDER**

---

Miller, J.

        This matter is before me after my June 5, 2008 order directing Plaintiff to show

cause why his complaint should not be dismissed pursuant to Rule 11 of the Federal

Rules of Civil Procedure for misrepresentations contained therein (07-cv-318 Docket

No. 22) and Plaintiff's response to that order (07-cv-318 Docket No. 24), filed June 24,

2008.  Plaintiff has also since filed an amended complaint, stating four federal claims for

relief and four Colorado state claims for relief (07-cv-318 Docket No. 26).


Background

        The facts surrounding this case are relatively straightforward, but the procedural

background is long and complicated.  However, an understanding of the procedural

background is necessary for purposes of my analysis and as such, I will detail it here.

At the time relevant to this action, Plaintiff was a prisoner in the segregation unit of the Kit Carson Correctional Center. (Am. Compl. ¶ 1, 07-cv-318 Docket No.3.) Defendants Dycus, Gilbert, and Domenico were all correctional officers at Kit Carson Correctional Center. (*Id.* at 2.) Defendant Traub was a medical staff member at Kit Carson Correctional Center. (*Id.*) All Defendants are sued in their individual and official capacities. (*Id.*) Plaintiff alleges as follows:[1] On July 3, 2002, when preparing to take Plaintiff out for his recreation time, Defendant Gilbert attempted to place wrist restraints on Plaintiff, but they were too small for his wrists, so Plaintiff told Defendant Gilbert that other officers usually used ankle restraints on his wrists. (*Id.* ¶¶ 1, 3, 6, 7.) Defendant Gilbert called Defendant Dycus to Plaintiff's cell and told Defendant Dycus that the restraints were too small, which caused Defendant Dycus to become extremely upset. (*Id.* ¶¶ 8-13.) Defendant Dycus then "maliciously and sadistically" grabbed Plaintiff's left wrist "with extreme force" and placed the ankle restraint around it very tightly, causing Plaintiff to jerk forward as a result of the pain caused by the tightness of the restraint, which in turn caused Defendant Dycus to yell at Plaintiff not to pull away. (*Id.* ¶¶ 15-17.) Plaintiff told Defendant Dycus the restraint was too tight and that he only twitched because of the pain he was feeling. (*Id.* ¶ 18.) Defendant Dycus then "maliciously and sadistically" grabbed Plaintiff's right wrist and "with even more extreme force," placed the ankle restraint on Plaintiff's right wrist very tightly, causing Plaintiff to again twitch from the sharp pain. (*Id.* ¶¶ 20-21.) Plaintiff told Defendant Dycus that the right

---

[1] All factual allegations are taken from Plaintiff's August 22, 2008 Amended Complaint in case number 07-cv-318 (07-cv-318 Docket No. 26). However, it should be noted that the allegations are essentially word-for-word the same as the allegations in Plaintiff's Amended Complaint in 03-cv-174 (03-cv-174 Docket No. 279).

restraint was on too tight and that both wrists were hurting badly, which prompted more yelling by Defendant Dycus. (*Id.* ¶¶ 23-25.) Defendant Dycus then told Plaintiff he was not going to allow Plaintiff to go to recreation or take a shower that day and instructed Plaintiff to put his wrists back through the slot in the door, which Plaintiff did. (*Id.* ¶¶ 26-27.) Defendant Dycus then grabbed Plaintiff's wrists with "extreme force and pressure" and removed the restraints. (*Id.* ¶ 28.)

Seeing markings on his wrists and feeling extreme pain in them, Plaintiff called for an officer to come back to his cell so that he could obtain medical assistance, but no one responded. (*Id.* ¶¶ 31-33.) While Defendant Gilbert was making his normal rounds later that day, Plaintiff told him that his wrists were badly injured, that he was feeling extreme pain in them, showed Defendant Gilbert the "deep colorized markings" on his wrists, and asked to see the nurse. (*Id.* ¶¶ 35, 37.) Defendant Gilbert refused to get the nurse, but obtained Defendant Dycus instead. (*Id.* ¶¶ 38-39.) Plaintiff told Defendant Dycus that he had serious injuries to his wrists, that he was feeling extreme pain, tingling, and numbness in his wrists and hands, and showed Defendant Dycus his hands. (*Id.* ¶¶ 40-42.) Defendant Dycus told Plaintiff he would get the nurse, but apparently did not do so. (*Id.* ¶ 43.) Later, Defendant Domenico was making his usual rounds and Plaintiff reported the same injuries to him, but Defendant Domenico told Plaintiff he could not call the nurse for him. (*Id.* ¶¶ 45-46.) Defendant Gilbert again made rounds later in the day and Plaintiff again reported his injuries to him and asked to see the nurse, but Defendant Gilbert refused. (*Id.* ¶¶ 47-49.) Plaintiff also then told Defendant Gilbert that it was time for Plaintiff to take his normal medication, Defendant Gilbert responded, "no," and Defendant Dycus then approached Plaintiff's cell. (*Id.* ¶¶

3

50-51.)  Plaintiff told Defendant Dycus that he needed his normal medication and needed to see the nurse for the injuries to his wrists, to which Defendant Dycus angrily replied that Plaintiff would not get anything, including medication or medical help, during Defendant Dycus' shift and that Plaintiff would have to wait until the next shift to get any help.  (*Id.* ¶¶ 54-55, 57.)  Defendant Dycus told the other staff members not to give Plaintiff anything and to stay away from Plaintiff's cell.  (*Id.* ¶ 56.)

Defendant Traub was doing her usual rounds sometime later and Plaintiff told her about the injuries to his wrists and stated he needed medical attention.  (*Id.* ¶ 58.) Defendant Traub inspected Plaintiff's injuries, documented them, and gave Plaintiff medication to relieve his pain.  (*Id.* ¶ 62.)  Plaintiff asked Defendant Traub to keep his medical information confidential, due to his fear of Defendant Dycus, which she agreed to do.  (*Id.* ¶¶ 63-64.)  However, as Defendant Traub was leaving, she told Defendant Dycus about Plaintiff's medical condition and showed him her documentation of Plaintiff's injuries.  (*Id.* ¶¶ 65-66.)

Plaintiff was not allowed to see a doctor about the injuries to his wrists until November, 2002.  (*Id.* ¶ 89.)  The doctor told Plaintiff he had suffered nerve damage to his left hand, which could be permanent.  (*Id.* ¶ 90.)  The doctor also told Plaintiff that the nerves had to repair themselves, and stated that if the nerves did heal, they would do so at a rate of half an inch per year, which could take a total of more than 10 years in Plaintiff's case.  (*Id.*)

Plaintiff originally brought suit alleging these injuries on January 29, 2003, when he filed a complaint in case number 03-WM-0174 (MJW) (now captioned 03-cv-00174-CMA-MJW). (Pl.'s Compl., 03-cv-174 Docket No. 3.)  Plaintiff originally named as

defendants Gilbert, Dycus, Domenico, and Traub, as well as eight additional defendants who were prison officials employed by the state and the private company that ran the Kit Carson Correctional Center.[2]  In that complaint, Plaintiff asserted the following claims: (1) Eighth Amendment claim against Defendant Dycus for use of excessive force; (2) Eighth Amendment claim against Defendants Dycus, Gilbert, and Domenico for failure to allow Plaintiff to seek medical attention; (3) Eighth Amendment claim against Defendant Gilbert for failure to intervene in Defendant Dycus' use of excessive force; (4) Colorado claim against Defendant Dycus for assault and battery; (5) Colorado claim against Defendants Dycus, Gilbert, and Domenico for negligence; (6) Eighth Amendment claim against Defendants Dycus, Gilbert, and Domenico for failure to give Plaintiff his prescribed medication; (7) Eighth Amendment claim against Defendant Traub for disclosure of Plaintiff's confidential medical information; (8) Colorado claim against Defendant Traub for breach of medical confidentiality; and (9) Colorado claim against Defendant Dycus for intentional infliction of emotional distress.  (Pl.'s Compl., 03-cv-174 Docket No. 3.)

The Defendants in that case filed a Motion to Dismiss on June 10, 2003 (03-cv-174 Docket No. 32.)  Magistrate Judge Michael J. Watanabe recommended that Defendants' Motion to Dismiss be granted (03-cv-174 Docket No. 58) and Plaintiff

---

[2] Although Plaintiff named the additional prison official defendants in the "Parties" section of his complaint, he did not specify in the "Claims" section of the complaint whether he was alleging any or all of the claims against those defendants.  However, the Tenth Circuit Court of Appeals later interpreted Plaintiff's complaint as also alleging the claims against the additional prison official defendants because Plaintiff alleged that they "were notified of Dycus's acts through [Plaintiff's] use of [the Colorado Department of Corrections'] inmate grievance procedure, but they failed to act."  (Tenth Circuit Order 3, March 5, 2008.)

objected (03-cv-174 Docket No. 68). On February 3, 2004, I issued an order (03-cv-174 Docket No. 90) accepting in part Magistrate Judge Watanabe's recommendation and dismissing with prejudice all of Plaintiff's claims except the following: (1) Eighth Amendment claim against Defendant Dycus for use of excessive force; (2) Colorado claim against Defendant Dycus for assault and battery; (3) Colorado claim against Defendants Dycus, Gilbert, and Domenico for negligence; (4) Eighth Amendment claim against Defendant Dycus for refusal to give Plaintiff his prescribed medication; (5) Colorado claim against Defendant Traub for breach of medical confidentiality; and (6) Colorado claim against Defendant Dycus for intentional infliction of emotional distress. I also ordered Plaintiff to file an amended complaint addressing only the remaining claims. Plaintiff thereafter filed two amended complaints, dated March 10, 2004 and July 12, 2004, neither of which complied with my order. On October 12, 2004, I again issued an order giving Plaintiff one more opportunity to file an amended complaint addressing only the remaining claims, and I specified that Plaintiff's failure to do so would result in dismissal of his case (03-cv-174 Docket No. 209). Plaintiff did not file his amended complaint by the required date and accordingly, I dismissed the case without prejudice on December 28, 2004 (03-cv-174 Docket No. 258).

On January 1, 2005, Plaintiff filed a Motion for Extension of Time to file an amended complaint (03-cv-174 Docket No. 259) and on January 11, 2005, Plaintiff filed a Motion for Reconsideration of my December 28, 2004 order dismissing his complaint (03-cv-174 Docket No. 264), as well as an amended complaint (03-cv-174 Docket No. 261), which only asserted the remaining claims. On February 3, 2005, I denied Plaintiff's Motion for Reconsideration of my December 28, 2004 order dismissing his

complaint (03-cv-174 Docket No. 266) and on September 11, 2006, the Tenth Circuit Court of Appeals affirmed that order granting Defendants' Motion to Dismiss (03-cv-174 Docket No. 269).

On February 14, 2007, Plaintiff initiated the present action, case number 07-cv-00318, by filing a complaint against Defendants Gilbert, Dycus, Domenico, and Traub (07-cv-318 Docket No. 3). However, on February 15, 2007, in case number 03-cv-174, the Tenth Circuit Court of Appeals sua sponte entered an order granting rehearing and vacating its September 11, 2006 opinion (03-cv-174 Docket No. 271) due to a change in the law regarding the Prison Litigation Reform Act's ("PLRA") exhaustion of administrative remedies requirement, a ground I relied upon in my initial order. On March 5, 2007, nunc pro tunc February 23, 2007, the Tenth Circuit Court of Appeals filed a revised opinion vacating the portion of my opinion dismissing Plaintiff's claims based on failure to plead exhaustion of remedies under the PLRA and remanding the case (03-cv-174 Docket No. 272). In light of the Tenth Circuit Court of Appeals' decision, as well as the claims I did not dismiss in my Order on Defendants' Motion to Dismiss, all of Plaintiff's original claims were again pending. Therefore, at that point, Plaintiff had the following claims pending before this Court:[3] (1) Eighth Amendment claim against Defendant Dycus for use of excessive force; (2) Eighth Amendment claim against Defendants Dycus, Gilbert, and Domenico for failure to allow Plaintiff to seek

_____

[3] The Tenth Circuit Court of Appeals also vacated the portion of my opinion dismissing Plaintiff's Eighth Amendment Claims against a number of the additional prison official defendants, and as such, it appears as though Plaintiff's claims were again pending against those officials, namely Defendants Bair, Fuchs, Wederiski, Brill, and Correctional Corporations of America. (Tenth Circuit Order 2, March 5, 2008, 03-cv-174 Docket No. 275.)

medical attention; (3) Eighth Amendment claim against Defendant Gilbert for failure to intervene in Defendant Dycus' use of excessive force; (4) Colorado claim against Defendant Dycus for assault and battery; (5) Colorado claim against Defendants Dycus, Gilbert, and Domenico for negligence; (6) Eighth Amendment claim against Defendants Dycus, Gilbert, and Domenico for failure to provide Plaintiff his prescription medication; (7) Eighth Amendment claim against Defendant Traub for disclosure of Plaintiff's confidential medical information; (8) Colorado claim against Defendant Traub for breach of Plaintiff's medical confidentiality; and (9) Colorado claim against Defendant Dycus for intentional infliction of emotional distress. Furthermore, the result of the Tenth Circuit Court of Appeals' remand was that Plaintiff then had two cases arising out of the same July 3, 2002 incident pending in this court - 03-cv-00174 and 07-cv-00318.

Upon remand in case number 03-cv-00174, I ordered Plaintiff to file an amended complaint by July 14, 2008, addressing the claims that were then pending, and instructed him that failure to do so would result in the remaining claims being dismissed (03-cv-174 Docket No. 278). One week after the deadline, on July 21, 2008, Plaintiff filed his amended complaint (03-cv-174 Docket No. 279), which only alleged the following claims:[4] (1) Eighth Amendment claim against Defendants Dycus, Gilbert, and

_____

[4] Plaintiff's Eighth Amendment Claim for use of excessive force and all of Plaintiff's Colorado claims had survived my Order on Defendants' Motion to Dismiss and were unaffected by the decision of the Tenth Circuit Court of Appeals. However, Plaintiff's July 21, 2008 Amended Complaint, for unknown reasons, did not reassert those claims. Additionally, all of Plaintiff's previous complaints had listed the prison official defendants in the "Parties" section of the complaint, although they did not specify which claims were being asserted against those defendants in the "Claims" section of the complaint. However, in Plaintiff's July 21, 2008 Amended Complaint, Plaintiff did not list those prison official defendants in the "Parties" section of the complaint, nor did he list them in any particular claim in the "Claims" section of the complaint.

Domenico for failure to provide Plaintiff treatment for his wrist injuries; (2) Eighth Amendment claim against Defendant Gilbert for failure to intervene in Defendant Dycus' use of excessive force; (3) Eighth Amendment claim against Defendants Dycus, Gilbert, and Domenico for failure to provide Plaintiff his prescription medication; and (4) Eighth Amendment claim against Defendant Traub for disclosure of Plaintiff's confidential medical information. (Pl.'s Am. Compl., 03-cv-174 Docket No. 279.) Although Plaintiff failed to meet the court-ordered deadline for filing his amended complaint, which I had instructed him would result in dismissal, such a result never occurred.

On June 5, 2008, in case number 07-cv-318, I issued an order requiring Plaintiff to show cause why that case should not be dismissed pursuant to Rule 11 of the Federal Rules of Civil Procedure for misrepresentations in the complaint regarding whether Plaintiff had previously filed any lawsuits while incarcerated (07-cv-318 Docket No. 22). Plaintiff responded to my order to show cause on June 24, 2008 (07-cv-318 Docket No. 24), asserting that the case should not be dismissed because "failure to list the previously filed lawsuits on the complaint was an oversight but one which does not prejudice the parties to this action or cause delay or obstruction to the civil action at hand" and requesting an extension of time to file an amended complaint to cure the oversight. (Pl.'s Resp. to Order to Show Cause 1, 07-cv-318 Docket No. 24.) Plaintiff further asserted in his response, "[I]t seems that the extension in this action is warranted as the underlying action to this case (03-CV-0174) has been remanded back to this district court and, therefore, this action may not have to exist at all." (*Id.*)

On August 7, 2008 in case number 03-cv-174, Defendants filed a Motion to Dismiss or Alternatively for Summary Judgment (03-cv-174 Docket No. 284). Although I

had not ruled on Plaintiff's Response to my Order to Show Cause in case number 07-cv-318, on August 22, 2008, Plaintiff filed an amended complaint in that case (07-cv-318 Docket No. 26) alleging the following claims: (1) Eighth Amendment claim against Defendant Dycus for use of excessive force; (2) Eighth Amendment claim against Defendants Dycus, Gilbert, and Domenico for failure to provide Plaintiff treatment for his wrist injuries; (3) Colorado claim against Defendant Dycus for assault and battery; (4) Colorado claim against Defendants Dycus, Gilbert, and Domenico for negligence; (5) Eighth Amendment claim against Defendants Dycus, Gilbert, and Domenico for failure to provide Plaintiff his prescription medication; (6) Eighth Amendment claim against Defendant Traub for disclosure of Plaintiff's confidential medical information; (7) Colorado claim against Defendant Traub for breach of medical confidentiality; and (8) Colorado claim against Defendants Dycus, Gilbert, and Domenico for intentional infliction of emotional distress. (Pl.'s Am. Compl., 07-cv-318 Docket No. 26.)

On September 29, 2008, Plaintiff filed a motion to consolidate the cases (03-cv-174 Docket No. 302) stating that "the defendants in [case number 03-cv-174] and the related civil action no. 07-cv-318-WDM-BNB are one and the same and the claims from both cases stem from the same incident."

On October 22, 2008, case number 03-cv-174 was reassigned to United States District Court Judge Christine M. Arguello (03-cv-174 Docket No. 313). On October 27, 2008, Plaintiff filed a Motion for Summary Judgment (03-cv-174 Docket No. 315). On February 25, 2009, Magistrate Judge Watanabe recommended that Defendants' August 7, 2008 Motion to Dismiss or Alternatively for Summary Judgment be granted and that Plaintiff's October 27, 2008 Motion for Summary Judgment be denied (03-cv-174

Docket No. 346), which Plaintiff objected to (03-cv-174 Docket No. 362). On August 13, 2009, Judge Arguello affirmed and adopted the recommendations of Magistrate Judge Watanabe, granting Defendants' Motion to Dismiss or Alternatively for Summary Judgement and denying Plaintiff's Motion for Summary Judgment (03-cv-174 Docket No. 372). Specifically, Judge Arguello determined that for all of Plaintiff's claims, save one, summary judgment was appropriate because no genuine issue of material fact existed. As to Plaintiff's final claim, Judge Arguello found three grounds supporting its dismissal - failure to exhaust administrative remedies, failure to state a claim upon which relief could be granted, and no genuine issue of material fact entitling Defendants to summary judgment. (*Id.* at 14-16.)[5] On September 11, 2009, Plaintiff filed a Notice of Appeal of Judge Arguello's decision (03-cv-174 Docket No. 378).

<u>Standard of Review</u>

As Plaintiff is proceeding pro se, I am required to liberally construe his pleadings. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007). However, the Tenth Circuit Court of Appeals "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). Although the pending matters are the show cause order and Plaintiff's Amended Complaint, I take notice that this proceeding is duplicative of case no. 03-cv-

_____

[5] Although Plaintiff's July 21, 2008 Amended Complaint (03-cv-174 Docket No. 279) was filed one week after the required deadline, it was nonetheless accepted by the court and was the complaint relied upon by Magistrate Judge Watanabe and Judge Arguello in addressing Defendants' Motion to Dismiss or Alternatively for Summary Judgement. (*See* Mag. Recs., Feb. 25, 2009, 03-cv-174 Docket No. 346; Order Adopting Mag. Recs., August 13, 2009, 03-cv-174 Docket No. 372.)

174 and *sua sponte* address whether this action should be dismissed under the doctrine of claim preclusion.[6]

Discussion

"[T]rial courts may in appropriate cases raise the res judicata bar on their own motion." *Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211, 231 (1995). "While res judicata is a defense which can be waived . . . , if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised." *United States v. Sioux Nation of Indians*, 448 U.S. 371, 432 (1980) (citing *Hedger Transportation Corp. v. Ira S. Bushey & Sons*, 186 F.2d 236 (2nd Cir. 1951); *Evarts v. Western Metal Finishing Co.*, 253 F.2d 637, 639 n.1 (9th Cir. 1958); *Scholla v. Scholla*, 201 F.2d 211 (D.C. Cir. 1953); *Hicks v. Holland*, 235 F.2d 183 (6th Cir. 1956)). "This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Id.* (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948); *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313, 328 (1971); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)).

"Res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage

---

[6] The doctrine of claim preclusion is also sometimes referred to as "res judicata." However, the Tenth Circuit Court of Appeals has expressed a preference for referring to it as claim preclusion, *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.1 (10th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 76 n.1 (1984). Accordingly, to the extent possible, I will do so here.

reliance on adjudication." *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464,

1467 (10th Cir. 1993). "Res judicata, or claim preclusion, precludes a party or its privies

from relitigating issues that were or could have been raised in an earlier action, provided

that the earlier action proceeded to a final judgment on the merits." *King v. Union Oil

Co. of Calif.*, 117 F.3d 443, 445 (10th Cir. 1997) (citing *Lowell Staats Mining Co., Inc. v.

Philadelphia Elec. Co.*, 878 F.2d 1271, 1274 (10th Cir. 1989)). A claim is barred by

claim preclusion if four elements are met: (1) a final judgment on the merits in the prior

suit; (2) the prior suit involved the same parties or their privies; (3) identity of the cause

of action in both suits; and (4) a full and fair opportunity to litigate the claim in the prior

suit.[7] *Plotner v. AT&T* Corp., 224 F.3d 1161, 1168 (10th Cir. 2000) (end citations

omitted); *King*, 117 F.3d at 445 (end citations omitted); *Satsky*, 7 F.3d at 1467.

I will first address whether the court's August 13, 2009 Order Adopting

Magistrate's Recommendations in case number 03-cv-174 constituted a final judgment

on the merits in that suit, such that it may be accorded preclusive effect here. The court

granted summary judgment in favor of Defendants on all four of the claims asserted by

Plaintiff in his July 21, 2008 Amended Complaint. (Order Adopting Mag. Recs. 16,

August 13, 2009, 03-cv-174 Docket No. 372.) The court determined that for all but one

of Plaintiff's claims, summary judgment was appropriate because no genuine issue of

---

[7] Although I list the requirement that the Plaintiff have had a full and fair opportunity to litigate the claim in the prior suit as one of the required elements, it is also sometimes characterized as a defense to claim preclusion. However, "[w]hether a full and fair opportunity to litigate is characterized as an element of res judicata, or its absence an exception to application of the doctrine is immaterial to the question of whether there was such an opportunity. . . ." *Plotner*, 224 F.3d at 1170 n.4 (internal citation omitted).

material fact existed.  (*Id.* at 12, 13.)  However, regarding Plaintiff's Eighth Amendment

claim against Defendant Traub for intentional disclosure of Plaintiff's confidential

medical information, the court reasoned that multiple grounds existed to support

dismissal of that claim or a grant of summary judgment in Defendants' favor.  The court

first found that Plaintiff's claim should be dismissed for failure to exhaust his

administrative remedies (*id.* at 14), but also found that the claim should be dismissed for

failure to state a claim upon which relief could be granted because Plaintiff did not suffer

a physical injury as a result of the disclosure (*id.*), and finally found that the facts left no

question as to a key element of liability, and that accordingly, summary judgment in

favor of Defendants was appropriate (*id.* at 15-16).

Although it does not appear that the Tenth Circuit Court of Appeals has directly

addressed the issue, it is well established that "many dispositions short of a trial are

considered 'on the merits' for claim preclusion purposes even though the validity of

some or all of the theories of liability, claims for relief, and defenses of the parties may

remain undetermined."  18 *Moore's Federal Practice*, § 131.30[3][a] (Matthew Bender

3d ed.) (2007).  "Both claim preclusion and issue preclusion result from summary

judgments that rest on the lack of any genuine issue of material fact going to the merits

of a claim or defense."  *Wright, Miller & Cooper*, *Federal Practice and Procedure* § 4444

(2009).  *See also Qualls v. NIU Bd. of Trustees*, 272 Fed.Appx. 512, 513-14 (7th Cir.

2008); *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 988 (9th Cir. 2005);

*Dowd v. Society of St. Columbans*, 861 F.2d 761, 764 (1st Cir. 1988); *Adkins v. Allstate

Ins. Co.*, 729 F.2d 974, 976 n.3 (4th Cir. 1984)*; Nathan v. Rowan*, 651 F.2d 1223, 1226

(6th Cir. 1981); *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 715 (2d Cir. 1977).

In this case it is clear that in case number 03-cv-174 the court determined that no genuine issue of material fact existed, thereby entitling Defendants to summary judgment, on Plaintiff's Eighth Amendment claim for refusal to provide medical treatment, his Eighth Amendment claim for failure to intervene, and his Eighth Amendment claim for refusal to provide prescription medication. Regarding Plaintiff's Eighth Amendment claim for disclosure of his confidential medical information, although the court relied on a number of alternative theories, one of those was that even if Plaintiff had adequately stated a claim upon which relief could be granted, no genuine issue of material fact existed regarding the confidentiality of the information disclosed (Order Adopting Mag. Recs. 15, August 13, 2009, 03-cv-174 Docket No. 372), thereby entitling Defendants to summary judgment in their favor.[8] Accordingly, the court's August 13, 2009 order entering summary judgment in Defendants' favor constituted a judgment on the merits as required under the doctrine of res judicata.

A separate but related inquiry concerns whether the court's August 13, 2009

---

[8] As previously stated, the court alternatively reasoned that Plaintiff had failed to exhaust his administrative remedies for that claim (Order Adopting Mag. Recs. 14, August 13, 2009, 03-cv-174 Docket No. 372) and also that Plaintiff had failed to state a claim upon which relief could be granted because he did not suffer a physical injury as a result of the disclosure (*id.*). Although a dismissal for failure to exhaust administrative remedies might not be sufficient to constitute a final judgment on the merits for claim preclusion purposes, 18 *Moore's Federal Practice*, § 131.30[3][b] (Matthew Bender 3d ed.) (2007), a dismissal for failure to state a claim upon which relief can be granted is treated as a judgment on the merits, and is therefore entitled to preclusive effect, *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).

order constituted a final judgment. "A final judgment in federal court can be the basis for claim preclusion despite the fact that an appeal is pending, or that the judgment may be subject to appeal in the future." 18 *Moore's Federal Practice*, § 131.30[2][c][ii] (Matthew Bender 3d ed.) (2007) (citing *Huron Holding Co. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941)). *See also Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997) (stating that the majority view regarding the pendency of appeals "provides that the fact that an appeal is pending in a case does not generally vitiate the res judicata effect of a judgment."). As the court in *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988), said, "To deny preclusion in these circumstances would lead to an absurd result: Litigants would be able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in the tangles of duplicative litigation," essentially what Plaintiff has done here. Although the disposition of Plaintiff's appeal could affect the preclusive effect of the court's August 13, 2009 judgment, 18 *Moore's Federal Practice*, § 131.30[2][c][iii] (Matthew Bender 3d ed.) (2007), no such disposition has yet occurred. Accordingly, although Plaintiff has appealed the court's August 13, 2009 order granting summary judgment to Defendants, that order is nonetheless a final judgment. I conclude that the court's August 13, 2009 order constituted a final judgment on the merits, thereby satisfying the first required element for claim preclusion.

I now turn to the second required element for claim preclusion - that the prior suit involve the same parties or their privies as the current suit. "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same

parties or their privies based on the same cause of action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.5 (1979). An extensive analysis is not necessary on this point because Oloyea D. Wallin was the plaintiff in case number 03-cv-174 and is also the Plaintiff here in case number 07-cv-318. Furthermore, Defendants Dycus, Gilbert, Domenico, and Traub were all also defendants in case number 03-cv-174. Accordingly, the second required element for claim preclusion is also present.

I now turn to the third required element for claim preclusion - the identity of the cause of action in both suits. Claim preclusion bars not only the same claim, but also any other claims that could have been raised in the prior suit. *King*, 117 F.3d at 445 (citing *Lowell Staats*, 878 F.2d at 1274). "Where a second suit between the same parties or their privies is on the same cause of action, the final judgment in the prior action is conclusive as to all matters which were actually litigated as well as those which could have been litigated." *Spence v. Latting*, 512 F.2d 93, 98 (10th Cir. 1975) (end citations omitted). Accordingly, the analysis essentially consists of two steps: (1) are the two suits on the same cause of action; and (2) if so, were the matters in the second suit litigated, or could they have been litigated, in the first suit. If the answer to both questions is yes, then the third required element of claim preclusion is present. The purpose behind this doctrine is to "prevent[ ] endless or repetitive litigation by effectively coercing the plaintiff to present all his grounds for recovery in the first proceeding." *Id.*

In *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988), the Tenth Circuit Court of Appeals adopted the so-called "transactional approach" of the Restatement Second of Judgments in determining what constitutes a

cause of action for claim preclusion purposes. "What factual grouping constitutes a 'transaction' . . . [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting Restatement Second of Judgments § 24). Under this approach, "[A] final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Lowell Staats*, 878 F.2d at 1274 (citing *Petromanagment Corp.*, 835 F.2d at 1335; Restatement (Second) of Judgments § 24 (1982)).

In this case, the inquiry is not a complicated one. The facts alleged by Plaintiff in case number 07-cv-318 are almost word-for-word identical to those alleged in case number 03-cv-174. Even Plaintiff has stated in his filings that case number 03-cv-174 is the "underlying action" to case number 07-cv-318, and that both might not need to exist (Pl.'s Resp. to Order to Show Cause 1, 07-cv-318 Docket No. 24), as well as the fact that "the defendants in [case number 03-cv-174] and related civil action no. 07-cv-318-WDM-BNB are one and the same and the claims from both cases stem from the same incident" (Pl.'s Mot. to Consolidate ¶ 1, 03-cv-174 Docket No. 302). I conclude that these cases do constitute a single transaction.

I now turn to whether the claims alleged by Plaintiff in the second suit either were litigated in the first suit, or could have been litigated in the first suit. Plaintiff alleges eight claims for relief in the Amended Complaint currently before me (07-cv-318 Docket

No. 26).  These claims generally fall into two groups.  The first group consists of three claims that were actually litigated in the prior suit.  First is Plaintiff's Eighth Amendment claim against Defendants Dycus, Gilbert, and Domenico for failure to allow Plaintiff to seek medical attention, upon which Judge Arguello entered summary judgment in Defendants' favor in the prior suit, second is Plaintiff's Eighth Amendment claim against Defendant Dycus for failure to provide Plaintiff his prescription medication, a claim upon which Judge Arguello also entered summary judgment in Defendants' favor in the prior suit, and third is Plaintiff's Eighth Amendment claim against Defendant Traub for disclosure of Plaintiff's confidential medical information, which was also litigated in the prior suit.  Specifically, the claim against Defendant Traub is the claim for which Judge Arguello reasoned that multiple grounds existed to support its dismissal, including the fact that it failed to state a claim upon which relief could be granted and the fact that no genuine issue of material fact existed, both of which constitute final judgments on the merits for res judicata purposes.  Accordingly, I conclude that these three claims were actually litigated in the prior suit.

The second group consists of five claims that were not actually litigated in the prior suit, but could have been:  Eighth Amendment claim against Defendant Dycus for use of excessive force; Colorado claim against Defendant Dycus for assault and battery; Colorado claim against Defendants Dycus, Gilbert, and Domenico for negligence; Colorado claim against Defendant Traub for breach of medical confidentiality; and Colorado claim against Defendant Dycus for intentional infliction of emotional distress.  These claims were all asserted by Plaintiff in his initial complaint in

the prior suit, all survived my February 3, 2004 Order on Defendants' Motion to Dismiss, and therefore were all still pending after the Tenth Circuit Court of Appeals' order. However, when Plaintiff filed his July 21, 2008 amended complaint in case number 03-cv-174, the one relied upon by Magistrate Judge Watanabe and Judge Arguello in addressing Defendants' Motion to Dismiss or Alternatively for Summary Judgment, for some reason Plaintiff decided not to proceed on them. However, Plaintiff's independent choice not to proceed on these claims in the prior suit does not entitle him to assert them here; they could have been brought then and accordingly, claim preclusion bars Plaintiff from bringing them now.

I finally must determine whether Plaintiff had a full opportunity to litigate his claims in the prior suit. The purpose of this element is to ensure that in the prior action there was no "deficiency that would undermine the fundamental fairness of the original proceedings." *Petromanagement*, 835 F.2d at 1344. The presence of a full and fair opportunity to litigate assures there was no "reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Id.* at 1334 (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 (1883)). *See also In re Mersmann*, 505 F.3d 1033, 1049 (10th Cir. 2007) (finding no full and fair opportunity to litigate in the prior action where a creditor in a bankruptcy proceeding was given inadequate notice of the proceeding, resulting in the discharge of its claims). No such procedural deficiency appears to be present here. Rather, Plaintiff was given very clear directions in the prior suit regarding the steps he needed to take in order to comply with my orders, he was given many, many chances to comply with those orders, including chances to amend

him complaint, and in the end, he was permitted to proceed on an untimely complaint.  I do not discern any reason to doubt the quality, extensiveness, or fairness of the procedures followed in case number 03-cv-174.  Because all four required elements of claim preclusion are present, all eight of Plaintiff's claims asserted in the present action are barred and should be dismissed.

Accordingly, it is ordered that Plaintiff's complaint be dismissed with prejudice.

DATED at Denver, Colorado, on March 10, 2010.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge